SYLVESTER & POLEDNAK, LTD.
JEFFREY R. SYLVESTER, ESQ.
Nevada Bar No. 4396
MATTHEW T. KNEELAND, ESQ.
Nevada Bar No. 11829
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone: (702) 952-5200
Fax: (702) 952-5205
Email: jeff@sylvesterpolednak.com
Email: matthew@sylvesterpolednak.com
*Attorneys for Debtor William Gayler*

RECEIVED AND FILED
IN OPEN COURT

DATE: 8-22-2012  BRR

RECEIVED
AND FILED

AUG 22 2012

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WILLIAM A. GAYLER<br><br>                    Debtor. | Case No.  BK-S-09-31603-MKN<br>Chapter 7 Involuntary |
| JOHN D. O'BRIEN, AS TRUSTEE OF THE JOHN D. O'BRIEN PROFIT SHARING PLAN, DONALD CAMPBELL, COLBY WILLIAMS, MARIO P. BORINI, INDIVIDUALLY AND AS A CHAIRMAN OF THE BOARD OF TRUSTEES OF THE ALEXANDER DAWSON FOUNDATION,<br><br>                    Plaintiff,<br><br>v.<br><br>WILLIAM GAYLER,<br><br>                    Defendant. | Adv. Pro. No.  11-01027-MKN<br><br>**MOTION FOR JUDGMENT ON PARTIAL FINDINGS**<br><br><br>Trial:   August 20, 2012<br>          August 21, 2012<br>          August 22, 2012 |

William A. Gayler ("Debtor"), by and through his attorneys at the law firm of Sylvester & Polednak, Ltd., respectfully submits this Motion for Judgment on Partial Findings, pursuant to Fed. R. Bank. P. 7052 and Fed. R. Civ. P. 52. This Motion is made and based upon the attached Memorandum of Points and Authorities, the evidence presented at trial, and the oral argument, if any, the Court may entertain on this matter.

*(left margin, vertical)* SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

DATED this 19th day of August, 2012.

SYLVESTER & POLEDNAK, LTD.

By _____
JEFFREY R. SYLVESTER, ESQ.
MATTHEW T. KNEELAND, ESQ.
1731 Village Center Circle
Las Vegas, Nevada 89134
Attorneys for Debtor William Gayler

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This case arises out of a purchase and sale transaction involving one 3.15 acre parcel of raw land in Mesquite, Nevada. Plaintiffs invested in the purchase and development of said parcel and now, following the crash of the global real estate market, seek a refund of their investment. Based upon the evidence presented at trial and the arguments made herein, Mr. Gayler requests a judgment on partial findings pursuant to Federal Rule of Bankruptcy Procedure 7052(c).

On January 28, 2011, Plaintiffs filed their Adversary Complaint seeking a declaration that a $750,000 secured debt owed by Diamante Rose, LLC is actually the personal debt of Mr. Gayler, and an order of non-dischargeability regarding the same. In support of the relief requested, Plaintiffs objected to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) (money obtained by a false representation or actual fraud) and 11 U.S.C. § 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity). The primary factual issues at trial were: (1) whether the structure of the purchase and sale transaction, including a certain financing arrangement, were disclosed to the Plaintiffs as members of Diamante Rose; (2) whether Mr. Gayler ever possessed a fraudulent intent to deceive these Plaintiffs; and (3) whether Mr. Gayler acted in a fiduciary capacity. As the evidence now before this Court demonstrates, Plaintiffs received sufficient notice, there was no fraudulent intent and Mr. Gayler is not a § 523(a)(4) fiduciary. Accordingly, Plaintiffs' objections are untenable and Mr. Gayler is entitled to judgment pursuant to Federal Rule of Bankruptcy Procedure 7052(c).

## II.

## LEGAL STANDARD

Rule 7052(c), incorporating Federal Rule of Civil Procedure 52(c), authorizes this Court to enter judgment any time a party has been fully heard on an issue and the Court can make an appropriate disposition on the evidence.[1]  Under Rule 7052(c), the Court has express authority to resolve disputed issues of fact.[2]  The Court may make findings in accordance with its own view of the evidence, and is not required to draw any inferences in favor of the non-moving party.[3]

## III.

## RELEVANT FACTS ESTABLISHED AT TRIAL

### A.    Plaintiffs' Experience and Sophistication are Remarkable.

Plaintiffs are extremely sophisticated attorneys and businessmen, whose credentials indicate they are literally unsusceptible to deceit or oversight in a commercial transaction. For example, Plaintiffs Don Campbell and Colby Williams are long time Nevada attorneys who, individually and as a law firm, are rated "AV Preeminent - 5.0" by Martindale-Hubblle.[4] Williams has litigated extensively in the area of corporate law, and even successfully argued in the Nevada Supreme Court regarding corporate fiduciary duty.[5]  Both Campbell and Williams practice in the area of commercial litigation, and Campbell has been listed by Woodward & White for the last twenty years as one of the Best Lawyers in America in multiple categories.[6]

---

[1]In re Stearman 256 B.R. 788 (9th Cir. BAP 2000).

[2]Id. See also Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006) (as cited in Assurance Co. of America v. National Fire & Marine Ins. Co., 2012 WL 2589883, *3 (D. Nev. 2012)) (construing Fed. R. Civ. P. 52(c)).

[3]Id.

[4]"AV Preeminent is a significant rating accomplishment- a testament to the fact that a lawyer's peers rank him or her at the highest level of professional excellence." http://www.martindale.com/ Products_and_Services/Peer_Review_Ratings.aspx.

[5]Decl. of Colby Williams, at 2.

[6]Decl. of Donald Campbell, at 2-3; Decl. of Colby Williams, at 2.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

For his part, Plaintiff Mario Borini is an 85 year old man with broad and prestigious experience in business and investments, serving as a Certified Public Accountant since 1953 and corporate officer for companies like Gulfstream Aerospace since 1978.[7] Mr Borini's education is beyond reproach, as he graduated *cum laude* from NYU with a BS in accounting and was first in his class at NYU while earning his Masters Degree in business administration.[8] Since 1991, Mr. Borini served as the Chairman of the Board of Trustees for the Alexander Dawson Foundation, overseeing and approving/disapproving investments on the Foundation's behalf.[9]

John O'Brien is a former Federal Magistrate Judge, a role he served for five years between 1978 and 1983.[10] Mr. O'Brien was first admitted to the Nebraska Bar in 1965, and has been admitted as an attorney in Nevada since 1969.[11] His forty-plus years of legal practice has primarily encompassed civil litigation, estate planning, and corporate transactions.[12] And since 1987, Mr. O'Brien has served on the Board of Trustees for the Alexander Dawson Foundation, both as secretary and Chairman, often approving/disapproving investments for the Foundation.

Notwithstanding their litany of accomplishments and centuries of collective experience successfully litigating the importance of the written word, these sophisticated Plaintiffs admittedly received all of Mr. Gayler's disclosures, read the same and performed no due diligence before investing in the Diamante Rose investment. In other words, these Plaintiffs never undertook any independent inquiry regarding the transaction into which they invested hundreds of thousands of dollars, and now argue they were duped into making their investments.

/ / /

/ / /

---

[7]Decl. of Mario Borini, at 2.

[8]Id.

[9]Id. at 3.

[10]Decl. of John O'Brien, at 2.

[11]Id.

[12]Id.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

**B.    As Sophisticated Attorneys and Businessmen Plaintiffs Knew or Should Have Known All Material Facts Underlying Their Investment in Diamante Rose.**

**1.    The Investment Opportunity.**

In March 2005, Mr. Gayler formed two Nevada limited liability companies, Diamante Rose and Lewis Cellars, for the purpose of acquiring and developing 3.15 acres of undeveloped land in Mesquite, Nevada (the "Property").[13]   At that time, the Property was the single asset of a failed Nevada company known as Mesquite Rebb, LLC, which company was the debtor-in-possession in Nevada Bankruptcy Case No. BKS-04-22635BAM.[14]   Mr. Gayler intended for Lewis Cellars to purchase the Property out of bankruptcy for $2,200,000, to sell or assign the Property to Diamante Rose for $2,500,000, and to use the $300,000 gain as his own capital contribution into the newly formed Diamante Rose entity.[15]

**2.    The Initial Purchase and Public Documents.**

On March 10, 2005, Lewis Cellars entered into an agreement to purchase the Property from the bankruptcy estate of Mesquite Rebb for $2,200,000.[16]   On March 29, 2005, Mesquite Rebb publicly filed its "Motion to Authorize the Sale of Real Property" [Doc. 64 in Case No. BKS-04-22635BAM], attaching the aforementioned purchase agreement as "Exhibit A," requesting Bankruptcy Court approval of the sale to Lewis Cellars.[17]   Notably, that Motion was granted at a public hearing on April 13, 2005, and the Order authorizing the sale was entered on the Bankruptcy Court's publicly available docket on April 19, 2005.[18]   The Order was also

---

[13]Decl. of William Gayler, at 3, ¶¶ 10-11.

[14]Id., at ¶ 9.

[15]Decl. of William Gayler, at 3, ¶¶ 13-14.

[16]Id., at ¶ 12; Plaintiffs' Trial Exhibit #6 (Purchase and Sale Agreement) at Bates Nos. FATCO 000230-240.

[17]Decl. of William Gayler, at 3, ¶ 21; Mr. Gayler's Trial Exhibit "A" (publicly filed Motion to Authorize the Sale of Real Property, Bates No. Plaintiffs 000012-26).

[18]Decl. of William Gayler, at 5, ¶ 25; Plaintiffs' Trial Exhibit #9 (Court Order, Bates Nos. FATCO 000417-424).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

1    recorded as a public document in the Clark County Recorder's Office on May 11, 2005, and re-

2    recorded on August 16, 2005.[19]

3            **3.    The Affirmative Disclosures.**

4            In addition to the publicly available documents filed in Mesquite Rebb's bankruptcy

5    proceeding and in the Clark County Recorder's Office between March and August 2005, Mr.

6    Gayler sent correspondence to the Plaintiffs dated April 18, 2005 expressly identifying the

7    Assessor's Parcel Number ("APN") for the Property, and specifically representing that the

8    Property was currently subject to a bankruptcy proceeding.[20]  Plaintiffs Williams, Campbell and

9    O'Brien admittedly received and reviewed this disclosure in early April 2005, while Plaintiff

10   Borini received and reviewed the same in May 2005.[21]  At the time of the April correspondence,

11   the Property was unencumbered and no financing was needed.  Indeed, Mr. Gayler anticipated

12   raising the funds necessary to close the Mesquite Rebb sale and assignment to Diamante Rose,

13   and to fund his capital contribution in Diamante Rose, without financing, such that the Subject

14   Property, when acquired and re-sold, would be free and clear of liens.[22]

15           On or about April 27, 2005, Mr. Gayler also provided the Plaintiffs a draft Operating

16   Agreement for Diamante Rose, which the Plaintiffs admittedly reviewed and signed.[23]  § 2.06 of

17   the Agreement relates to notes and deeds of trust, and was intentionally left blank because, at that

---

[19]Id.

[20]Decl. of Donald Campbell, Esq., at 6-7; Decl. of John O'Brien, Esq., at 5-6; Decl. of Colby Williams, Esq., at 4-5; Decl. of Mario Borini, at 6-7; Decl. of William Gayler, at 3-4, ¶¶ 15-17; Plaintiffs' Trial Exhibit #4 (Bates No. Plaintiffs 000027-33).

[21]Decl. of Donald Campbell, Esq., at 6:2-9; Decl. of John O'Brien, Esq., at 5:19-25, 6:1-2; Decl. of Colby Williams, Esq., at 4:19-26; Decl. of Mario Borini, at 6:16-17.

[22]Decl. of William Gayler, at 4, ¶¶ 18-19.

[23]Decl. of Donald Campbell, Esq., at 7:14-15; Decl. of John O'Brien, Esq., at 7:24-28, 6:1-2; Decl. of Colby Williams, Esq., at 6:5-6; Decl. of Mario Borini, at 7:22-23; Decl. of William Gayler, at 4, ¶ 19; Plaintiffs' Trial Exhibit #5 (Draft Operating Agreement, Bates Nos. FATCO 000968-984); Mr. Gayler's Trial Exhibit "C" (Bates Nos. PLAINTIFFS 000077-105) (fully executed copy of the Operating Agreement) at PLAINTIFFS 000092 (signature of Mario Borini), 000093 (John O'Brien), 000098 (Colby Williams), and 000099 (Donald Campbell).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

time, financing was not yet needed.[24] As stated, Mr. Gayler intended to raise all funds necessary to close both transactions, without financing or encumbering the Property.

Most notably, the aforementioned Operating Agreement specifically provided material disclosures regarding the structure of the transaction. As a threshold matter, on page 1, in the introductory paragraph, the term "Company" is defined as "Diamante Rose, LLC."[25] The Operating Agreement disclosed that the "Seller of the Property" (as opposed to the "Company," or the "Initial Buyer"), filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, and that the sale was subject to court approval.[26] This disclosure specifically relates to the Mesquite Rebb bankruptcy proceeding, which by then had already made the "initial purchase" by Lewis Cellars a matter of public record.[27]

Furthermore, by signing the Operating Agreement, the Plaintiffs expressly acknowledged that Mr. Gayler was the "sole member of the initial buyer" (as opposed to the "Company" or the "Seller").[28] The "initial buyer" was Lewis Cellars and, as noted, its participation in the transaction was already a matter of public record as of March 29, 2005.

The Operating Agreement further provided that Mr. Gayler intended to use the sale proceeds remaining after the "initial purchase" to fund his capital contribution in Diamante Rose. More specifically, the Operating Agreement expressly stated:

> **2.07 Acquisition of the Property.** The Company shall acquire the property, APN# 001-18-210-013 for a purchase price of <u>Two Million Five Hundred Thousand and 00/100 Dollars (2,500,000.00)</u>. The Property shall be conveyed to the Company by Grant Bargain and Sale Deed free and clear of all liens, and other monetary encumbrances except current real property taxes, assessments and notes. The Company shall obtain a CLTA owner's policy of title insurance, with coverage in the amount of the purchase

---

[24]Decl. of William Gayler, at 4, ¶ 19.

[25]Id. at PLAINTIFFS 000077.

[26]Id. at PLAINTIFFS 000078, § 2.07.

[27]See, e.g., Mr. Gayler's Trial Exhibit "A" (publicly filed Motion to Authorize the Sale of Real Property, Bates No. Plaintiffs 000012-26).

[28]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement) at PLAINTIFFS 000078, § 2.07.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-7-

**price. The Company acknowledges that Seller of the Property has filed a petition for reorganization under Title 11 of the United States Bankruptcy Code, Chapter 11 (the "Code") and that the sale of the Property is subject to the approval of the Trustee and the Court pursuant to the Code. The Company also acknowledges that William A. Gayler is the sole member of the initial buyer of the Property, and as such shall use the sale proceeds remaining after funding the initial purchase to fund his capital contribution to the Company, any amount remaining after the Gayler capital contribution shall be distributed to ICON real Estate Companies, Inc. as consultation fee.**[29]

Mr. Gayler intentionally caused the latter portion of § 2.07 to appear in a bold print so that the reader's attention would be specifically drawn to the disclosures.[30] And at no time prior to or subsequent to the Plaintiffs' execution of the Operating Agreement did any of the Plaintiffs inquire as to the meaning, terms, and/or conditions of § 2.07, nor did any of the Plaintiffs express any concern regarding the express disclosures made therein.[31]

Despite knowing the APN for the Property, and notwithstanding their express knowledge of the Mesquite Rebb bankruptcy proceeding, Plaintiffs admittedly did no due diligence before deciding to invest in Diamante Rose.[32] Instead, Plaintiffs purportedly relied solely on the alleged verbal representations made by Gayler in or around April 2005 that the Property would be acquired without financing.[33] Plaintiffs Williams, Campbell and O'Brien wired their investment monies directly to First American Title between May 2 and May 5, 2005, respectively, meaning their decision to invest and attendant deposits actually pre-dated the later financing and encumbrance discussed below. Importantly, all material facts were truthfully disclosed and/or publicly available to Plaintiffs beginning in March 2005.[34]

---

[29]Id. (emphasis in original).

[30]Decl. of William Gayler, at 8, ¶ 38.

[31]Id.

[32]Decl. of Donald Campbell, Esq., at 10:8-9; Decl. of John O'Brien, Esq., at 10:14-16; Decl. of Colby Williams, Esq., at 8:17-19; Decl. of Mario Borini, at 9:20-22.

[33]Id.

[34]See, e.g., Mr. Gayler's Trial Exhibit "A" (publicly filed Motion to Authorize the Sale of Real Property, Bates No. Plaintiffs 000012-26); Plaintiffs' Trial Exhibit #9 (Court Order approving

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

#### 4.   The Initial Purchase and Bridge Loan from Dana Carbo.

Fund-raising efforts fell short, and in order to fully fund and close the initial purchase, Lewis Cellars borrowed $750,000 from Dana Carbo (the "Carbo Loan").[35] This loan was secured by a promissory note and deed of trust encumbering the Property.[36] The initial purchase from Mesquite Rebb closed on May 11, 2005, with $1,500,800.00 of Diamante Rose investor funds (including the monies contributed by Plaintiffs Williams, Campbell and O'Brien) and the Carbo Loan.[37] Mr. Gayler's intention in obtaining the Carbo Loan was to close the initial purchase and pay off the Carbo Note on or before its maturity date in November 2005 with additional funds raised thereafter through additional Diamante Rose investors, like Plaintiff Mario Borini.[38]

#### 5.   The August Closing Packet.

Though the Carbo Loan was initially made to Lewis Cellars, Diamante Rose expressly assumed the Carbo Loan when it purchased the Property from Lewis Cellars in August 2005.[39]

---

Motion, Bates Nos. FATCO 000417-424, filed April 19, 2005 and first recorded May 11, 2005 ); Mr. Gayler's Trial Exhibit "C" (Plaintiffs signed the Diamante Rose Operating Agreement disclosing material facts at § 2.07 in April or May 2005, respectively); Plaintiffs' Trial Exhibit #21 (publicly recorded deed of trust for Carbo Loan, Bates No. FATCO 000432-442, first recorded May 11, 2005); Plaintiffs' Trial Exhibit # 20 (publicly recorded Grant, Bargain, Sale Deed from Mesquite Rebb, LLC to Lewis Cellars, LLC, Bates Nos. FATCO 000425-431, first recorded May 11, 2005).
See also, ***Mr. Gayler's Trial Exhibit "H" ("Closing Packet," Bates Nos. PLAINTIFFS 000074-116) (admittedly received and reviewed by ALL Plaintiffs, though notably misidentified as "Defendant's Trial Exhibit #1 in Plaintiffs' declarations)*** at PLAINTIFFS 000112 (Closing Statement expressly referencing Carbo Loan and assumption thereof), and PLAINTIFFS 000113-114 (Grant, Bargain, and Sale Deed signed by Mr. Gayler for Apan Wine, expressly noting Property conveyed to Diamante Rose "subject to...existing encumbrance of record.").

[35]Decl. of William Gayler, at 6, ¶ 30.

[36]Id.

[37]Id.; Mr. Gayler's Trial Exhibit "B" (Final Settlement Statement dated May 11, 2005, Bates Nos. FATCO 000083-84).

[38]Decl. of William Gayler, at 6-7, ¶ 30.  Despite a series of subsequent transactions to keep the Property from going into foreclosure, the Property was ultimately lost through foreclosure in or about November 2010 for $100,000.

[39]Decl. of William Gayler, at 9, § 41; Mr. Gayler's Trial Exhibit "H" (Closing Statement expressly referencing Carbo Loan and assumption thereof , at Bates No. PLAINTIFFS 000112); Plaintiffs'

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-9-

After this second closing, Mr. Gayler forwarded a letter to the members of Diamante Rose, including Plaintiffs, attaching the recorded Grant, Bargain and Sale Deed conveying the Subject Property to Diamante Rose "*subject to...existing encumbrance of record*."[40] At that point in time, the only "existing encumbrance of record" was the Deed of Trust in favor of Dana Carbo.[41]

Notably, the Grant, Bargain and Sale Deed was signed exclusively by Mr. Gayler, in his capacity as manager of Apan Wine, i.e., the manager of BOTH Lewis Cellars and Diamante Rose.[42] All Plaintiffs admittedly received and reviewed this Closing Packet, including the Grant, Bargain and Sale Deed, in or about August 2005, and admittedly did not conduct *any* independent investigation or due diligence into the transaction thereafter.[43]

Also attached to the August 2005 Memorandum was the Closing Statement for the Diamante Rose closing.[44] The Closing Statement reflects Diamante Rose's assumption of the Carbo Loan, specifically referencing "Dana Carbo" as the lender and "$750,000" as the amount of the loan.[45] The Closing Statement also unequivocally denotes "Mesquite Rebb, LLC" as one of the sellers of the Subject Property.[46] Accordingly, as of August 2005, Plaintiffs knew or should have known that:

    1.    Lewis Cellars purchased the Property from Mesquite Rebb of out of bankruptcy for $2.2 million;

---

Trial Exhibit # 25 (Bates Nos. FATCO 0001053-1058) at 1053, § 5.

[40] See Mr. Gayler's Trial Exhibit "H" at PLAINTIFFS 000113.

[41] See Plaintiffs' Trial Exhibit #21 (publicly recorded deed of trust for Carbo Loan, Bates No. FATCO 000432-442, first recorded May 11, 2005)

[42] See Mr. Gayler's Trial Exhibit "H" at PLAINTIFFS 000114.

[43] Decl. of Donald Campbell, Esq., at 10:8-9, 23-25; Decl. of John O'Brien, Esq., at 10:14-16, 20-23; Decl. of Colby Williams, Esq., at 8:17-19, 9:6-8; Decl. of Mario Borini, at 9:20-22, 11:12-15.

[44] Decl. of William Gayler, at 10, ¶ 46; Mr. Gayler's Trial Exhibit "H" at PLAINTIFFS 000112.

[45] Id.

[46] Id.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

2.    Plaintiffs Williams, Campbell and O'Brien's investment monies went directly to purchase the Property;

3.    Lewis Cellars utilized a short-term bridge loan from Dana Carbo to close the "initial purchase" from Mesquite Rebb, resulting in an encumbrance on the Property;

4.    Mr. Gayler was the sole member of Lewis Cellars;

5.    Diamante Rose purchased the Property from Lewis Cellars for $2.5 million;

6.    Mr. Gayler intended to utilize the difference between the "initial purchase" price and the Diamante Rose purchase price to fund his capital contribution into Diamante Rose;

7.    Diamante Rose took the Property "subject to" the Carbo Deed of Trust.

Yet, despite their centuries of collective litigation, business and investment experience, notwithstanding their worldliness and advanced education, and never minding that they admittedly received and reviewed _all_ of the aforementioned affirmative disclosures (and even signed the Operating Agreement), Plaintiffs raised no questions or concerns and conducted no inquiry at all into the transaction.

### 6.    Servicing the Carbo Loan.

Subsequent to closing the Lewis Cellars/Mesquite Rebb escrow, Diamante Rose raised approximately $718,500.00 in additional funds to purchase the Property from Lewis Cellars, debt service the Carbo loan, and to develop the Property.[47]  For approximately three years following purchase of the Property, Diamante Rose serviced the Carbo Loan debt by making monthly interest payments totaling approximately $403,000.00.[48]

/ / /

---

[47]Decl. of William Gayler, at 9, ¶ 42; Plaintiffs' Trial Exhibit # 27 (Deposit Details, Bates Nos. BOW 000010-12, 20-21, 25, 32).

[48]Decl. of William Gayler, at 11, ¶ 51; Plaintiffs' Trial Exhibit #38, BOW 000075-78 ($52,000); Plaintiffs' Trial Exhibit # 43, BOW 000079-80, 159, 162-163 ($286,440); Adversary Complaint [Doc. 165 in Case 09-31603-mkn] at 6:22-26 ($65,000).

1

### 7.    Plaintiffs' Inaction.

2        The Diamante Rose Operating Agreement provided, at § 9.02, that Apan Wine, as

3   managing member, by and through Mr. Gayler, was required to keep books and records reflecting

4   company transactions.[49]   That provision also stated that all of the books and records of the entity

5   were available during reasonable business hours for inspection and examination by the members

6   of Diamante Rose, including Plaintiffs, or their representatives.[50]  Notably, none of the Plaintiffs

7   ever inspected the books and records of Diamante Rose, until Plaintiff John O'Brien finally did

8   so in the Spring of 2009.

9        Moreover, during the time period between May 2005 through 2010, Plaintiff John

10  O'Brien often visited the offices where the business records were maintained, to discuss his

11  various investments.[51]  Mr. O'Brien, just as all Plaintiffs, had complete and unfettered access to

12  all of the books and records of the various entities in which he was a member, including but not

13  limited to Diamante Rose.[52]  Despite his consistent presence at the office, and unfettered access

14  to the books and records, at no time prior to 2009 did Mr. O'Brien (or any other Plaintiff) ever

15  inspect the books and records of Diamante Rose.[53]  And at no time following Mr. O'Brien's

16  review of the books and records did he, or any other member (including the Plaintiffs herein),

17  seek to remove Apan Wine or Mr. Gayler as manager of Diamante Rose.[54]  Instead, Apan Wine,

18  by and through Mr. Gayler, continued to serve as manager for Diamante Rose through the

19  commencement of the Diamante Rose bankruptcy filing in or around August 2010.[55]

20

21  [49]See Mr. Gayler's Trial Exhibit "C" (fully executed Operating Agreement, Bates Nos. PLAINTIFFS

22  000077-105) at PLAINTIFFS 000088.

23  [50]Id.

24  [51]Decl. of William Gayler, at 14-15, ¶ 63.

25  [52]Id.

26  [53]Id.

27  [54]Id. at 15, ¶ 65.

28  [55]Id.

-12-

Notably, there was full disclosure of all material terms and conditions in the Operating Agreement, the Grant Bargain and Sale Deed, and the Closing Statement. Further information was readily accessible by Plaintiffs via publicly available documents filed in the Mesquite Rebb bankruptcy and recorded in the Clark County Recorder's Office. All material information was also available within the Diamante Rose books and records, which were always available for review and inspection by these Plaintiffs. Ultimately, and in historic fashion, the global real estate market collapsed, money to keep up with the interest payments on the Loan was no longer available and the Property was lost through foreclosure in or about November 2010.[56]

IV.

**LEGAL ANALYSIS**

Plaintiffs alleged two objections to discharge: a § 523(a)(2)(A) claim alleging failure to disclose material terms of the Diamante Rose transaction, including the purchase price, Carbo Loan and encumbrance on the Property, and a § 523(a)(4) claim alleging misappropriation of the Diamante Rose funds raised after close of escrow. Mr. Gayler is entitled to a judgment of dismissal of both objections.

**A.    § 523(a)(2) Claim: Mr. Gayler Provided Fair and Truthful Disclosures.**

An action for non-dischargeability under § 523(a)(2)(A) requires a showing, beyond a preponderance of the evidence, of: "(1) a misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct."[57] Here, the conduct complained-of was Mr. Gayler's alleged failure to disclose the underlying structure of the Diamante Rose transaction, including the initial purchase

---

[56]Notably, the Property sold at foreclosure sale, as reflected in the Trustee's Deed Upon Sale, for $100,000. Id. at 13, ¶ 58; Mr. Gayler's Trial Exhibit "G" (Trustee's Deed Upon Sale). Thus, the value of Plaintiffs' investments, attributable solely to the global economic meltdown, was substantially depleted, with or without the Carbo Loan and Deed of Trust.

[57]In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

by Lewis Cellars and the encumbrance on the Property per the Carbo Loan.  Plaintiffs cannot

succeed on this claim however, as the threshold element - i.e., misrepresentation, fraudulent

omission or deceptive conduct - and the scienter element - i.e., intent to deceive - do not exist.

### 1.    There was no fraudulent misrepresentation or omission.

Plaintiffs' § 523(a)(2) claim is belied by the express terms of the Diamante Rose

Operating Agreement, the information disclosed within the August 2005 closing packet, and the

publicly available documents regarding the transaction.  As there was no "misrepresentation,

fraudulent omission or deceptive conduct by the debtor," this claim must fail.

### a.    The publicly available documents provided constructive notice.

As noted above, many of the allegedly omitted facts regarding this transaction became

matters of public record on March 29, 2005 when Mesquite Rebb filed its Motion to approve the

sale to Lewis Cellars.[58]  Notably, attached to that Motion was a copy of the Purchase and Sale

Agreement between Lewis Cellars and Mesquite Rebb, showing the initial purchase price of

$2,200,000.[59]  The Motion was GRANTED at a public hearing on April 13, 2005, and the Order

authorizing the sale to Lewis Cellars was filed on April 19, 2005,[60] and also recorded as a public

document in the Recorder's Office on May 11, 2005 (and re-recorded on August 16, 2005).[61]

Moreover, the Deed of Trust evidencing the Carbo Loan and attendant encumbrance on

the Property was publicly recorded and available as of May 11, 2005.[62]  The Grant, Bargain and

Sale Deed evidencing the Mesquite Rebb/Lewis Cellars sale was also publicly recorded on May

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

---

[58]Mr. Gayler's Trial Exhibit "A" (publicly filed Motion to Authorize the Sale of Real Property, Bates No. Plaintiffs 000012-26).

[59]Plaintiffs' Trial Exhibit #6 (Purchase and Sale Agreement) at Bates Nos. FATCO 000230-240.

[60]Plaintiffs' Trial Exhibit #9 (Court Order, Bates Nos. FATCO 000417-424).

[61]Id.

[62]See Plaintiffs' Trial Exhibit #21 (publicly recorded deed of trust for Carbo Loan, Bates No. FATCO 000432-442, first recorded May 11, 2005).

-14-

11, 2005.[63] Accordingly, Plaintiffs were on constructive notice regarding the Mesquite Rebb bankruptcy and the complained-of structure of the transaction, including the $2.2 million initial purchase price and Carbo encumbrance, beginning in March 2005.

### b.    The affirmative disclosures were fair and truthful.

In addition to this constructive notice, Plaintiffs were given express and truthful disclosures regarding the transaction. Mr. Gayler's April 18, 2005 correspondence introducing Plaintiffs to the investment opportunity expressly identified the parcel number for the Property, and specifically stated that the Property was currently subject to a bankruptcy proceeding.[64] Each Plaintiff received and reviewed this correspondence, but conducted no due diligence regarding the Property nor the ongoing bankruptcy proceeding.[65] Had Plaintiffs performed *any* inquiry into the public record regarding either the property (e.g., by conducting a brief search on the Clark County Assessor's website for APN 001-18-210-013) or the Mesquite Rebb bankruptcy (e.g., by conducting a brief search via the CM/ECF website), they would have identified Mesquite Rebb as the current owner and debtor-in-possession, and would have specifically seen the Mesquite Rebb/Lewis Cellars purchase and sale agreement.

Also, on or about April 27, 2005, Mr. Gayler provided the Plaintiffs a draft Operating Agreement for Diamante Rose, which the Plaintiffs admittedly reviewed,[66] and which specifically provided material disclosures regarding the structure of the transaction.[67] In short, the Operating

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

---

[63]See Plaintiffs' Trial Exhibit # 20 (publicly recorded Grant, Bargain, Sale Deed from Mesquite Rebb, LLC to Lewis Cellars, LLC, Bates Nos. FATCO 000425-431, first recorded May 11, 2005).

[64]Decl. of Donald Campbell, Esq., at 6-7; Decl. of John O'Brien, Esq., at 5-6; Decl. of Colby Williams, Esq., at 4-5; Decl. of Mario Borini, at 6-7; Decl. of William Gayler, at 3-4, ¶¶ 15-17; Plaintiffs' Trial Exhibit #4 (Bates No. Plaintiffs 000027-33).

[65]Decl. of Donald Campbell, Esq., at 6:2-9, 9:21-23; Decl. of John O'Brien, Esq., at 5:19-25, 6:1-2, 9:9-13; Decl. of Colby Williams, Esq., at 4:19-26, 8:3-5; Decl. of Mario Borini, at 6:16-17, 9:20-22.

[66]Decl. of Donald Campbell, Esq., at 7:14-15; Decl. of John O'Brien, Esq., at 7:27; Decl. of Colby Williams, Esq., at 6:5; Decl. of Mario Borini, at 7:22.

[67]See Plaintiffs' Trial Exhibit # 5 (draft Operating Agreement, Bates Nos. FATCO 000968-984) at FATCO 000969, §2.07.

Agreement truthfully disclosed the following material terms:

1.    that the "Seller of the Property" was in bankruptcy;

2.    that the "initial purchase" would be through an "initial buyer;"

3.    that Mr. Gayler was the "sole member" of the "initial buyer;"

4.    that Diamante Rose was buying the Property for $2,500,000 from the "initial buyer;"

5.    that there would be a difference between the "initial purchase" price and the price paid by Diamante Rose, and

6.    that Mr. Gayler intended to use the differential to fund his capital contribution to Diamante Rose, with any excess distributed to his company.

Notably, these Plaintiffs reviewed and signed the Agreement, and never inquired nor raised any concern regarding terms and/or conditions therein.[68]

As noted above, "Company" was defined in the Operating Agreement as "Diamante Rose, LLC,"[69] and Mr. Gayler disclosed that the "Seller of the Property" (as opposed to the "Company," or the "Initial Buyer") was a debtor in bankruptcy, which made the sale subject to court approval.[70] This disclosure specifically relates to the Mesquite Rebb bankruptcy proceeding, which by then had made the "initial purchase" by Lewis Cellars for $2.2 million a matter of public record.[71] Again, had Plaintiffs performed *any* inquiry into the Property or bankruptcy court records, they would have identified Mesquite Rebb as the debtor-in-possession,

---

[68]Decl. of William Gayler, at 8, ¶ 38; Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000092 (signature of Mario Borini), 000093 (John O'Brien), 000098 (Colby Williams), and 000099 (Donald Campbell); Decl. of William Gayler, at 8, ¶ 38.

[69]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000077.

[70]Id. at PLAINTIFFS 000078.

[71]See Mr. Gayler's Trial Exhibit "A" (Mesquite Rebb's Motion to Approve Sale, filed March 29, 2005, Bates Nos. PLAINTIFFS 000012-26).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

Lewis Cellars as the "initial buyer" and the "initial purchase" price of $2.2 million.[72]

Furthermore, by signing the Operating Agreement, the Plaintiffs expressly acknowledged that Mr. Gayler was the "sole member of the *initial buyer*" (as opposed to the "Company" or the "Seller").[73] The "initial buyer" was Lewis Cellars, and its participation in the transaction was a matter of public record as early as March 29, 2005, when Mesquite Rebb filed its Motion to approve the sale.

The Operating Agreement also expressly provided that Mr. Gayler intended to use the sale proceeds remaining after the "initial purchase" to fund his capital contribution in Diamante Rose.[74] Mr. Gayler intentionally caused the latter portion of § 2.07 within the Agreement, i.e., where these disclosures were made, to appear in a bold print so that the reader's attention would be specifically drawn to the disclosures.[75] And at no time prior to or subsequent to the Plaintiffs' execution of the Operating Agreement did any of the Plaintiffs inquire as to the meaning, terms, and/or conditions of § 2.07, nor did any of the Plaintiffs express any concern regarding the express disclosures made therein.[76] Instead, Plaintiffs simply ignored these disclosures, though this Court should not.[77]

Despite knowing the parcel number for the Property and their express knowledge of the Mesquite Rebb bankruptcy, and notwithstanding the affirmative disclosure that there was an "initial buyer" for the "initial purchase" that would generate Mr. Gayler's capital contribution,

---

[72]Id. at PLAINTIFFS 000014-22 (Purchase and Sale Agreement attached to Motion as Exhibit "A").

[73]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000078, § 2.07 (emphasis added).

[74]Id.

[75]Decl. of William Gayler, at 8, ¶ 38.

[76]Id.

[77]See Coblentz v. Union Welfare Fund, 112 Nev. 1161, 1169, 925 P.2d 496, 501 (1996) ("We do not interpret contracts to render provisions meaningless.").

-17-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

1    Plaintiffs admittedly did no due diligence before deciding to invest in Diamante Rose.[78]  Instead,

2    Plaintiff's purportedly relied solely on the alleged verbal representations made by Mr. Gayler in

3    or around April 2005 that the Property would be acquired out of bankruptcy and without

4    financing.[79]  As noted however, Mr. Gayler's representations were truthful, because at that time

5    the Property was in-fact being purchased out of bankruptcy, without financing.[80]

6        Indeed, as more fully discussed below, Plaintiffs Williams, Campbell and O'Brien wired

7    their investment monies directly to First American Title between May 2 and May 5, 2005,

8    meaning their decision to invest and attendant deposits actually pre-dated the Carbo Loan and

9    encumbrance on the Subject Property.  Importantly, all material facts were truthfully disclosed

10   and/or publicly available to Plaintiffs beginning in March 2005.

11       Additionally, the Deed conveying the Property to Diamante Rose, disclosed to and

12   reviewed by these Plaintiffs in or around August 2005,[81] clearly reflected that the Property was

13   being conveyed "subject to...existing encumbrance of record."[82]  As noted above, the only

14   "encumbrance of record" at that time was the Carbo Deed of Trust.  Moreover, the Deed

15   expressly reflected that Mr. Gayler was signing on behalf of Lewis Cellars, by and through Apan

16   Wine, i.e., the same entity that was the manager for Diamante Rose.[83]

17       Also disclosed with the August 2005 closing packet was a Closing Statement that,

18   consistent with the Operating Agreement, reflected the encumbrance and the Carbo Loan in the

---

20   [78]Decl. of Donald Campbell, Esq., at 10:8-9; Decl. of John O'Brien, Esq., at 10:14-16; Decl. of
     Colby Williams, Esq., at 8:17-19; Decl. of Mario Borini, at 9:20-22.

22   [79]Id.

23   [80]Decl. of William Gayler, at 4, ¶ 18.

24   [81]Decl. of Donald Campbell, Esq., at 10:23-25; Decl. of John O'Brien, Esq., at 10:20-22; Decl. of
25   Colby Williams, Esq., at 9:6-8; Decl. of Mario Borini, at 11:12-15 ("In or about August 2005, I
     received a 42-page closing packet from Gayler...that I reviewed...") (citing Bates Nos. PLAINTIFFS
     000074-116).

27   [82]See Mr. Gayler's Trial Exhibit "H"(Bates Nos. PLAINTIFFS 000074-116) at PLAINTIFFS
     000113.

28   [83]Id. at PLAINTIFFS 000114.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

1  amount of $750,000.[84]  The Closing Statement also reflected that the obligation to repay the

2  Carbo Loan was being assumed by Diamante Rose.[85]  This Closing Statement even expressly

3  referenced Mesquite Rebb as one of the sellers.[86]  Yet, Plaintiffs raised no concerns and never

4  performed *any* inquiry into these disclosures.

5      In sum, Plaintiffs' § 523(a)(2)(A) objection necessarily fails, as these Plaintiffs received

6  true and fair notice of all material terms of the transaction.  Plaintiffs' own inaction to inquire or

7  perform *any* due diligence regarding the transaction does not amount to fraud by Mr. Gayler.

8  Resultantly, there is simply no misrepresentation, omission nor conduct upon which to object to

9  discharge, and Mr. Gayler is entitled to a judgment of dismissal on this claim.

10               **2.  There was no fraudulent intent.**

11      This Court has all of the evidence necessary to make a dispositive finding that Mr. Gayler

12  lacked the requisite intent to deceive these Plaintiffs.  In view of such a finding, the Court must

13  grant this motion for judgment.

14      As noted above, the third element of a viable § 523(a)(2) claim is the debtor's "intent to

15  deceive."[87]  Here, at the time Mr. Gayler represented the material facts of the transaction to

16  Plaintiffs, the statements were true, i.e., there would be no financing because up to that point Mr.

17  Gayler believed he could raise enough money to close the transaction without encumbering the

18  Property.[88]  Thus, as there was no false statement or omission, there was no intent to deceive.

19      Even *assuming arguendo* that the statements were false, or that Mr. Gayler did omit

20  material information, there was never any fraudulent intent.  And in this regard, this case is

21  closely analogous to In re Stearman,[89] wherein the Ninth Circuit Bankruptcy Appellate Panel

---

23  [84]Id. at  PLAINTIFFS 000112.

24  [85]Id.

25  [86]Id.

26  [87]In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).

27  [88]Decl. of William Gayler, at 4, § 18.

28  [89]256 B.R. 788 (9th Cir. BAP 2000).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-19-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

affirmed a Bankruptcy Court's Rule 7052(c) judgment in favor of a debtor in a § 523(a)(2) action where the debtor lacked intent to deceive her creditor in obtaining a loan.[90]

Here, just as in <u>Stearman</u>, when Gayler signed the Carbo Note on behalf of Apan Wine and Lewis Cellars, he had a basis to believe that the LLCs could repay the debt. Indeed, at that time, Mr. Gayler had already successfully raised $1,500,800 to close the transaction, and following execution of the Carbo Loan documents, he raised approximately $718,500 in additional funds intending to service the Loan.[91] This demonstrates not only that Mr. Gayler, on behalf of Apan Wine and Lewis Cellars, intended to repay the Loan, but also that he actually had the intent and "wherewithal" to do so, which demonstrates a lack of intent to deceive.[92]

Moreover, on behalf of the LLCs, Mr. Gayler *actually made the monthly payments*, for more than three years. From May 2005 through in or around July 2009, Mr. Gayler caused Diamante Rose to service the Carbo Loan to the approximate amount of $403,000.00.[93] Just as in <u>Stearman</u>, this fact is dispositive on the element of intent to deceive.[94]

In addition, in the April 2005 correspondence, Mr. Gayler *expressly disclosed* the parcel number for the Property and the ongoing bankruptcy proceeding wherein the Property was purchased by an "initial buyer" for $2.2 million.[95] Plaintiffs did nothing with this information.

Mr. Gayler also disclosed that the Property was being acquired "subject to... existing

---

[90]As more fully explained below, Mr. Gayler is not intimating that these Plaintiffs are "creditors," though the <u>Stearman</u> case is analogous inasmuch as the debtor in that case also lacked any fraudulent intent.

[91]Decl. of William Gayler, at 11, ¶ 50.

[92]See <u>Stearman</u>, 256 B.R. at 792 ("When Stearman signed the note that is in evidence, she had a basis on which to believe that she could pay the debt...she intended to pay it. She attempted to pay it. She had the wherewithal to pay it, *and none of these facts support a finding that she therefore had an intention to deceive*") (emphasis added).

[93]Decl. of William Gayler, at 11, ¶ 51.

[94]See <u>Stearman</u>, 256 B.R. at 792 ("The only thing that Stearman didn't do I suspect finally was pay the debt after she tried to pay it via her husband. *But that does not go to intent to deceive. In fact, it's inconsistent with intent to deceive.*") (emphasis added).

[95]See Plaintiffs' Trial Exhibit #4 (April 2005 Correspondence, Bates No. Plaintiffs 000027-33).

encumbrance of record."[96] And Plaintiffs admittedly reviewed this information in or around August 2005.[97] This shows there was no intent to hide the Carbo encumbrance, inasmuch as the same was a matter of public record and affirmatively disclosed to these Plaintiffs in the Deed.

Moreover, the Deed expressly reflected that Mr. Gayler was signing on behalf of Lewis Cellars, by and through Apan Wine, i.e., the same entity that was the manager for Diamante Rose.[98] Thus, there was no intent to deceive Plaintiffs regarding the "initial purchase," i.e., structure of the transaction, inasmuch as the sale to Diamante Rose was actually and expressly effectuated *by its own manager*.

Mr. Gayler also disclosed assumption of the Carbo Loan in the August 2005 Closing Statement.[99] The Closing Statement even expressly referenced Mesquite Rebb as one of the sellers.[100] This further demonstrates that Mr. Gayler never intended to deceive Plaintiffs.

Furthermore, Mr. Gayler disclosed the following material terms to Plaintiffs through the Operating Agreement:

1.  that the "Seller of the Property" was in bankruptcy;

2.  that the "initial purchase" would be through an "initial buyer;"

3.  that Mr. Gayler was the "sole member" of the "initial buyer;"

4.  that Diamante Rose was buying the Property for $2,500,000 from the "initial buyer;" and

5.  that there would be a difference between the "initial purchase" price and the price

---

[96]See Mr. Gayler's Trial Exhibit "H"(Bates Nos. PLAINTIFFS 000074-116) at PLAINTIFFS 000113.

[97]Decl. of Donald Campbell, Esq., at 10:23-25; Decl. of John O'Brien, Esq., at 10:20-22; Decl. of Colby Williams, Esq., at 9:6-8; Decl. of Mario Borini, at 11:12-15 ("In or about August 2005, I received a 42-page closing packet from Gayler...that I reviewed...") (citing Bates Nos. PLAINTIFFS 000074-116).

[98]See Mr. Gayler's Trial Exhibit "H"(Bates Nos. PLAINTIFFS 000074-116) at PLAINTIFFS 000114.

[99]Decl. of William Gayler, at 10, ¶ 46; Mr. Gayler's Trial Exhibit "H" at PLAINTIFFS 000112.

[100]Id.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

paid by Diamante Rose, which Mr. Gayler intended to use to fund his capital contribution to Diamante Rose, with any excess distributed to his company.[101] These disclosures encompassed the Mesquite Rebb bankruptcy proceeding, which by then had made the "initial purchase" by Lewis Cellars for $2.2 million a matter of public record,[102] and are certainly inconsistent with any intent to deceive.

The disclosures show that Mr. Gayler never intended to deceive Plaintiffs regarding the "initial purchase," the purchase price, the Carbo Loan, nor any other aspect of the transaction. Mr. Gayler affirmatively disclosed these facts to Plaintiffs, who raised no concerns. Mr. Gayler even intentionally caused these disclosures to appear within the Operating Agreement in a bold print, so that the reader's attention would be specifically drawn to the information.[103]  Certainly, a person intending to hide these facts or to deceive a party to the Agreement would not go out of his way to disclose the facts and specifically draw the reader's attention to the disclosure. Indeed, had Plaintiffs performed *any* inquiry upon receiving these disclosures, they would have identified the Carbo Loan and encumbrance, Mesquite Rebb as the initial seller, Lewis Cellars as the "initial buyer," and the "initial purchase" price of $2,200,000.

In sum, the fact that Mr. Gayler effectuated repayment of the Loan for 3.5 years, in addition to the foregoing affirmative and public disclosures, squarely undermines Plaintiffs' allegation that Mr. Gayler had any intention to deceive the Plaintiffs. Accordingly, there being no intent to deceive, there is no basis upon which to object to discharge under § 523(a)(2)(A), and Mr. Gayler is entitled to a judgment of dismissal on this claim.

**B.    § 523(a)(2) claim: The Three-year Statute of Limitations Expired in 2008.**

By August 2005, Plaintiffs knew or should have known all material facts underlying their investment in Diamante Rose, including those facts allegedly giving rise to their § 523(a)(2)

---

[101]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000078, § 2.07.

[102]See Mr. Gayler's Trial Exhibit "A" (Mesquite Rebb's Motion to Approve Sale, filed March 29, 2005, Bates Nos. PLAINTIFFS 000012-26).

[103]Decl. of William Gayler, at 8, ¶ 38.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-22-

claim. Mr. Gayler affirmatively disclosed the structure of the transaction, including the Carbo Loan, and any additional information was always available in the books and records of the LLC and within publicly filed and recorded documents. As Plaintiffs filed suit six years later in 2011, their claim of fraud is time barred by NRS 11.190(3)(d) - i.e., three-year statute of limitation for fraud claims in Nevada.

### 1.    NRS 11.190(3)(d) provides the limitations period on this claim.

For purposes of complaints in bankruptcy alleging non-dischargeability of unestablished debts, state statutes of limitations apply, and the filing of a bankruptcy petition has no effect on when such statutes expire.[104] This is because "there are two distinct issues to consider in the dischargeability analysis: first, the establishment of the debt itself, *which is subject to the applicable state statute of limitations*; and, second, a determination as to the nature of that debt, an issue within the exclusive jurisdiction of the bankruptcy court and thus governed by Bankruptcy Rule 4007.[105] Here, Gayler's debt to these Plaintiffs has not been established, so NRS 11.190(3) controls the timeliness of Plaintiffs' Adversary Complaint.[106]

---

[104]See, e.g., Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 868 (9th Cir. 2001); In re Russell, 203 B.R. 303 (Bankr. S.D. Cal. 1996).

[105]Banks, 263 F.3d at 868 (emphasis added).

[106]Mr. Gayler is cognizant of In re Gergely, 110 F.3d 1448 (9th Cir. 1997), which held that "the expiration of a state statute of limitations on fraud actions does not affect an action for non-dischargeability *if there is a valid judgment*," though that case is not on point, as there is no valid judgment encompassing the "debt" alleged in Plaintiffs' Adversary Complaint. Notably, a bankruptcy discharge extinguishes "the personal liability of the debtor with respect to any debt." 11 U.S.C. § 524(a)(1). Also, 11 U.S.C. § 523(a)(2) provides instances when a "debt" will not be discharged. And 11 U.S.C. § 101(12) states: "The term 'debt' means liability on a claim." Here, no liability has been established.

For the notion that a state statute of limitation does not apply to a non-dischargeability action in bankruptcy, the Gergely court relied on and quoted In re McKendry, 40 F.3d 331, 337 (10th Cir. 1994), wherein the court explained: "the *question of the dischargeability* of the *debt* under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law. *In this case, the debt has already been established, so the state statute of limitations is immaterial*." (Emphasis added). Notably, both cases dealt only with dischargeability, i.e., the "nature" of the debt, as personal liability of the debtors had already been established by state court proceedings. Accordingly, and consistent with the Code, where the debt - i.e., liability of a debtor

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-23-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

## 2.    Plaintiffs cannot avoid the three year limitation period.

In Nevada, to avoid operation of the statute of limitations for fraud claims, parties alleging fraud have an obligation to excuse their failure to discover the fraud in three years after it occurred.[107] Plaintiffs must also show they had no actual or presumptive knowledge of the facts sufficient to put them on constructive notice of their alleged injury.[108] In other words, a statute of limitation commences to run from the date of discovery of those facts which, in the exercise of proper diligence, would have enabled the plaintiff to learn of the fraud, and not from the date when the fraud is actually discovered.[109] Here, Plaintiffs knew or should have known of

on a claim - is already established (e.g., by "valid judgment"), the governing limitation period is Bank R. P. 4007 (providing that there is no time limit to file a §523(a) complaint).

However, where a non-dischargeability action is filed to *establish the debt* - i.e., personal liability of the debtor - *and* prevent discharge of the same, as in the instant case, the state statute of limitations applies. Banks, 263 F.3d at 868. Accord In re Janssens, 449 B.R. 42 (Bankr. D. Md. 2010), judgment aff'd, 2011 WL 1642575 (D. Md. 2011) (in determining the existence and the amount of the debt in non-dischargeability proceeding, *the bankruptcy court is required to apply the relevant state law according to which the debt arose*); In re Eisaman, 387 B.R. 219 (Bankr. N.D. Ind. 2008) (provisions of bankruptcy statute setting forth exceptions to discharge do not make a debtor liable to a creditor, but merely determine whether an existing liability is a dischargeable one, and liability is determined by non-bankruptcy law). Here, Plaintiffs are seeking a judgment for the first time that, under state law, they have no standing to bring.    Plaintiffs are not only litigating dischargeability of the "debt," they are also seeking to *establish* Mr. Gayler's personal liability therefor, based upon allegations of fraud.    And the limitation period for establishing such liability expired, under NRS 11.190(3), in 2008.

Indeed, in terms of policy, there is no clear reason why a creditor should be able to pursue an action under 11 U.S.C. § 523 based on a claim that is *per se* unenforceable in state court.    It is improbable that Congress, without explicitly stating, would vitiate state statutes of limitation and permit dischargeability litigation on the type of intentional torts or wrongs designated in § 523, which are pleaded for the first time in bankruptcy after a state statute of limitations expired. Accordingly, here, NRS 11.190(3)(d) governs the timeliness of Plaintiffs' action, and provides that the limitation period expired nearly three (3) years prior to Plaintiffs' filing of the Adversary Complaint.

[107]Aldabe v. Adams, 402 P.2d 34, 37 (Nev. 1965), overruled on other grounds by Siragusa v. Brown, 1393, 971 P.2d 801, 807 (Nev. 1998) (citing N.R.S. 11.190(3)(d)).

[108]Id.

[109]Howard v. Howard, 239 P.2d 584 (Nev. 1952). Accord Volk v. D.A. Davidson & Co., 816 F.2d 1406 (9th Cir. 1987) (affirming summary judgment on limitations grounds; statute of limitations began running when plaintiffs received annual report and letter from defendant indicating facts

-24-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

the alleged fraud - i.e., transaction structure and Carbo Loan - in August 2005. Having filed suit in 2011, i.e., three years after the limitations period expired, their fraud claim is now time-barred.

For example, in <u>Volk v. D.A. Davidson & Co.</u>, certain limited partners brought a fraud action against the individuals who sold them their partnership interests.[110] More specifically, the plaintiffs sued in 1984, alleging that the defendants fraudulently sold them limited partnership interests in 1976 and 1977. The trial court granted defendants' motion for summary judgment, concluding that the statute of limitations expired in 1982, and thus barred the claims. The court held that the statute of limitations commenced running in 1979, when the plaintiffs knew or should have known of the alleged fraud.

On appeal, the Ninth Circuit affirmed summary judgment for the defendants, finding that plaintiffs failed to use due diligence in their inquiry regarding the transaction, and unreasonably relied on some of the defendants' alleged misrepresentations.[111] Plaintiffs' lacked diligence, and their reliance was unreasonable, because the adverse features of their investment were expressly disclosed to them through an annual report, letters and IRS questionnaires in 1978 and 1979.[112]

In 2001, the Ninth Circuit again examined an analogous 'constructive notice through affirmative disclosure' case in <u>Pincay v. Andrews</u>.[113] There, investors brought suit against their financial managers seeking to recover, *inter alia*, for the managers' alleged fraud and RICO violations. The plaintiffs hired the defendants to manage their financial affairs for a flat fee of 5% of the plaintiffs' annual income. Throughout their arrangements, the defendants provided the plaintiffs with written disclosures, which the plaintiffs often signed, indicating the defendants financial stake in the transactions and how much defendants would be paid. In 1989, the

---

giving rise to causes of action alleged in complaint).

[110]816 F.2d 1406 (9th Cir. 1987) (affirming summary judgment on limitations grounds; statute of limitations began running when plaintiffs received annual report and letter from defendant indicating facts giving rise to causes of action alleged in complaint).

[111]<u>Id.</u> at 1416.

[112]<u>Id.</u> at 1410.

[113]238 F.3d 1106 (9th Cir. 2001)

plaintiffs terminated their relationship with the defendants and filed suit in Federal District Court in California.

The plaintiffs' alleged injury was that they paid more than 5% of their yearly income to the defendants. On appeal, following the trial court's denial of defendants' motion for judgment as a matter of law, the Ninth Circuit reversed, concluding that the statute of limitations had run as a matter of law prior to 1989 because the plaintiffs received written disclosure of their alleged damages as early as 1980. In so holding, the Ninth Circuit explained:

> [t]he plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud...*It is hard to imagine what would constitute 'enough information to warrant an investigation' if receiving a written disclosure of one's purported injury does not.*[114]

Mr. Gayler made similar affirmative disclosures here, in the Operating Agreement, the August 2005 Closing Statement and the Grant, Bargain and Sale Deed. As noted above, Mr. Gayler disclosed the following material terms to Plaintiffs:

1.      that the "Seller of the Property" was in bankruptcy;[115]

2.      that the "initial purchase" would be through an "initial buyer;"[116]

3.      that Mr. Gayler was the "sole member" of the "initial buyer;"[117]

4.      that Diamante Rose was buying the Property for $2,500,000 from the "initial buyer;"[118]

5.      that there would be a difference between the "initial purchase" price and the price paid by Diamante Rose, which Mr. Gayler intended to use to fund his capital

---

[114]Pincay, 238 F.3d at 1110 (emphasis added).

[115]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000078, § 2.07.

[116]Id.

[117]Id.

[118]Id.

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

contribution to Diamante Rose, with any excess distributed to his company;[119]

6.   that Diamante Rose expressly assumed repayment of the $750,000 Carbo Loan when it purchased the Property;[120]

7.   that "Mesquite Rebb, LLC" was one of the sellers of the Property;[121]

8.   that the Property was being conveyed "subject to...existing encumbrance of record;"[122] and

9.   that Mr. Gayler was conveying the Property to Diamante Rose on behalf of Lewis Cellars, by and through Apan Wine, i.e., the same entity that was the manager for Diamante Rose.[123]

Thus, Plaintiffs had "enough information to warrant an investigation," inasmuch as they admittedly received and reviewed the foregoing written disclosures of their purported injuries.

Had Plaintiffs performed *any* independent inquiry, they would have identified *all* of the bases upon which they now allege their fraud claim - i.e., that Mesquite Rebb was the initial seller and debtor-in-possession, that Mesquite Rebb initially sold the Property to Lewis Cellars for $2.2 million, and that the Carbo Loan was used to close this "initial purchase." On March 29, 2005, Mesquite Rebb filed its Motion to approve the sale to Lewis Cellars, thereby placing into the public record a copy of the Purchase and Sale Agreement by and between Lewis Cellars and Mesquite Rebb, showing the initial purchase price of $2,200,000.[124] The Motion was

---

[119]See Mr. Gayler's Trial Exhibit "C" (fully executed copy of the Operating Agreement, Bates Nos. PLAINTIFFS 000077-105) at PLAINTIFFS 000078, § 2.07.

[120]Mr. Gayler's Trial Exhibit "H"(Bates Nos. PLAINTIFFS 000074-116) at PLAINTIFFS 000112 (Closing Statement).

[121]Id.

[122]Id. at PLAINTIFFS 000113 (recorded Grant, Bargain and Sale Deed).

[123]Id. at PLAINTIFFS 000114.

[124]See Mr. Gayler's Trial Exhibit "A" (Mesquite Rebb's Motion to Approve Sale, filed March 29, 2005, Bates Nos. PLAINTIFFS 000012-26); Plaintiffs' Trial Exhibit #6 (Purchase and Sale Agreement) at Bates Nos. FATCO 000230-240.

-27-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

GRANTED at a public hearing on April 13, 2005, and the Order authorizing the sale to Lewis Cellars was entered on the Bankruptcy Court's publicly available docket on April 19, 2005.[125] The Order was also recorded as a public document in the Clark County Recorder's Office on May 11, 2005, and re-recorded on August 16, 2005.[126]

Moreover, the Carbo Deed of Trust evidencing the Carbo Loan and attendant encumbrance on the Property was and remains a publicly recorded and available document as of May 11, 2005.[127]  Also, the Grant, Bargain and Sale Deed evidencing that Mesquite Rebb first sold the Property to Lewis Cellars, i.e., the "initial buyer," was and remains a publicly recorded and available document.[128]  After receiving the affirmative disclosures noted above, e.g., the Grant, Bargain and Sale Deed indicating the Property was conveyed "subject to...existing encumbrance of record," with any modicum of due diligence Plaintiffs would and should have discovered their alleged fraud claims.

Instead of performing their own inquiry however, Plaintiffs sat idly by and did no investigation or due diligence. Accordingly, just as in <u>Volk</u> and <u>Pincay</u>, Plaintiffs had at least constructive knowledge of the purported fraud in August 2005, the statute of limitation for their § 523(a)(2)(A) claim expired in August 2008, and unless the statute of limitations was tolled Plaintiffs' claim is now subject to a Rule 7052(c) judgment of dismissal in favor of Mr. Gayler.

### 3. The doctrine of fraudulent concealment does not save the fraud claim.

As explained in <u>Pincay</u>, Plaintiffs cannot prevail on a tolling claim because "there is a long line of our cases holding that, in order to prevail on such a claim, plaintiffs 'must demonstrate that they had neither actual nor constructive notice of the facts constituting their

---

[125]Plaintiffs' Trial Exhibit #9 (Court Order, Bates Nos. FATCO 000417-424).

[126]<u>Id.</u>

[127] <u>See</u> Plaintiffs' Trial Exhibit #21 (publicly recorded deed of trust for Carbo Loan, Bates No. FATCO 000432-442, first recorded May 11, 2005).

[128]<u>See</u> Plaintiffs' Trial Exhibit # 20 (publicly recorded Grant, Bargain, Sale Deed from Mesquite Rebb, LLC to Lewis Cellars, LLC, Bates Nos. FATCO 000425-431, first recorded May 11, 2005).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

claims for relief.'"[129]  And, as noted above, Plaintiffs had at least constructive notice of the

alleged fraud in August 2005, as a matter of law. Therefore, they cannot prevail on a fraudulent

concealment tolling claim.

Indeed, here, just as in <u>Wood v. Santa Barbara Chamber of Commerce, Inc.</u>, Plaintiffs

will argue, without factual support, that the three-year statute of limitation should be tolled

because of an alleged fraudulent concealment by Mr. Gayler.  Plaintiffs will argue they had no

basis until at least 2009 (i.e., when Mr. O'Brien first inspected the books and records of the LLC)

to reasonably suspect the existence of the "initial purchase" for $2.2 million, nor the Carbo Loan

and/or the encumbrance on the Property.  However, as a basis for tolling the statute of

limitations, fraudulent concealment requires both successful concealment and fraudulent

means.[130]  And here, as noted, there was simply neither.

**a.      The was no successful concealment nor fraudulent means.**

Once knowledge is acquired, or once a party is merely put on notice, the statute begins to

run. As the Ninth Circuit has said, "if a prudent person would have become suspicious from the

knowledge obtained through the initial prudent inquiry and would have investigated further, a

plaintiff will be deemed to have knowledge of facts which would have been disclosed in a more

extensive investigation."[131]  And even if the plaintiff never actually conducted any further

investigation, "equity will impute to a litigant knowledge of facts that *would have been* revealed

by reasonably required further investigation."[132]

---

[129]238 F.3d at 1110 (9th Cir. 2001) (citing <u>Volk</u>, 816 F.2d at 1415; <u>Grimmett v. Brown</u>, 75 F.3d 506, 514-15 (9th Cir. 1996), cert. granted 116 S.Ct. 2521, 518 U.S. 1003, cert. dismissed as improvidently granted 117 S.Ct. 759, 519 U.S. 233. (citing cases). <u>Accord</u> <u>Wood v. Santa Barbara Chamber of Commerce, Inc.</u>, 705 F.2d 1515, 1521 (9th Cir. 1983) ("A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.").

[130]<u>Id.</u>

[131]<u>Briskin v. Ernst & Ernst</u>, 589 F.2d 1363, 1367 (9th Cir. 1978) (applying California law analogous to the equitable doctrine of fraudulent concealment).

[132]<u>Wood</u>, 705 F.2d at 1521 (emphasis added).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

Even assuming Plaintiffs did not actually know of the "initial purchase," the encumbrance and/or the Carbo Loan in 2005, they are deemed as a matter of law to have had such knowledge by virtue of the myriad of disclosures in the Operating Agreement, Closing Statement and Grant, Bargain and Sale Deed, and by virtue of the above-referenced publicly recorded and available documents. Indeed, as noted by Mr. O'Brien, he inspected the books and records of Diamante Rose in the Spring of 2009, and identified the Mesquite Rebb/Lewis Cellars Purchase and Sale Agreement, as well as the Carbo Loan documents, including the deed of trust encumbering the Property, executed in 2005.[133] Thus, the alleged fraud "would have been revealed by reasonably required further investigation" in 2005, had any of these Plaintiffs, at the very least, reviewed the books and records of Diamante Rose. Accordingly, Plaintiffs' fraud claim is time-barred, equity will not save the claim, and Mr. Gayler is entitled to a judgment of dismissal.

### C.   § 523(a)(4) claim: Mr. Gayler Is Not a § 523(a)(4) Fiduciary.

§ 523(a)(4) excepts from discharge debts that arise from "fraud or defalcation *while acting in a fiduciary capacity*, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Plaintiffs do not claim Mr. Gayler committed larceny,[134] but do contend the alleged debt arose from Gayler's fraud or defalcation while acting in a fiduciary capacity. This claim must be dismissed.

To prevail on a fraud claim under § 523(a)(4), Plaintiffs must not only show Mr. Gayler's fraud or defalcation, but also that Mr. Gayler acted in a fiduciary capacity when he committed the alleged fraud or defalcation.[135] The definition of "fiduciary capacity" under § 523(a)(4) is a

---

[133]Decl. of John O'Brien at 13:1-24 (describing what he found regarding the Mesquite Rebb sale to Lewis Cellars), 14:26-15:6 (stating he found the Carbo Note and Deed of Trust).

[134]In any event, the evidence demonstrates Diamante Rose came into possession of the investment funds lawfully. To sustain a cause of action for larceny under § 523(a)(4), an objecting creditor must show that the initial possession of the property was wrongful. Ormsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1205 (9th Cir.2010). See also 4 Collier on Bankruptcy 532.10[2] (Alan R. Resnick & Henry J. Sommer eds., 16th ed. 2010) ("As distinguished from embezzlement, [with larceny] the original taking of the property must be unlawful.").

[135]See Teichman v. Teichman (In re Teichman), 774 F.2d 1395, 1398 (9th Cir.1985). Accord In re Sawaged, 2011 WL 880464, *3 (10th Cir. BAP 2011) (unpublished) ("*Failure to prove the existence of a fiduciary relationship results in the conclusion that the discharge exception is not applicable.*") (emphasis added).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-30-

narrow one, and is governed by federal law, which provides:

> [t]he broad, general definition of fiduciary - a relationship involving confidence, trust and good faith - is inapplicable in the dischargeability context....*The fiduciary relationship must be one arising from an express or technical [i.e., statutory] trust* that was imposed before and without reference to the wrongdoing that caused the debt.[136]

Notably, these requirements exclude constructive, resulting or implied trusts.[137] And this narrow definition of "fiduciary" is consistent with the underlying policy of construing § 523 exceptions to discharge strictly against the objecting party and liberally in favor of the debtor.[138] Here, Mr. Gayler never acted under an express or technical trust, and Plaintiffs claim must be dismissed.

An express or technical trust is generally created by an agreement between two parties to impose a trust relationship.[139] The general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a trust res.[140] "The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust."[141] Likewise, for a statute to create a technical trust, "the statute must define the trust res, spell out the trustee's fiduciary duties, and impose a trust prior to and without reference to the wrong which created the debt."[142] Notably, state law relevant to the inquiry.[143]

---

[136]Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003) (internal citations omitted).

[137]Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir.1986) (citing Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 759 (9th Cir. 1981)).

[138]Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 377 n. 5 (9th Cir. BAP 2011). Accord In re Sawaged, 2011 WL 880464, *3 (10th Cir. BAP 2011) (unpublished) ("exceptions to discharge, including [under §523(a)(4)], are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor.").

[139]In re Bigelow, 271 B.R. 178, 186 (9th Cir. BAP 2001).

[140]In re Thornton, 544 F.2d 1005, 1007 (9th Cir.1976).

[141]Id.

[142]In re Bigelow, 271 B.R. 178, 187 (9th Cir. BAP 2001).

[143]Cantrell, 329 F.3d at 1125 (9th Cir. 2003) (citing Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir.1996)).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

Accordingly, this Court must determine whether Nevada statutory or case law creates an express or technical trust within the meaning of § 523(a)(4) between a managing member of a LLC and the other members. As to whether a technical trust is created between a manager and the entity's members, Nevada law is silent, meaning there is no such trust relationship in Nevada. It has been expressly determined however, under both California and Arizona law, that managers of a corporation are not § 523(a)(4) fiduciaries.[144] And that resultantly, no § 523(a)(4) claim lies where, as here, plaintiffs allege only a breach of common law fiduciary duties.[145] Indeed, "California case law has consistently held that while officers possess the fiduciary duties of an agent, they are not trustees with respect to corporate assets."[146]

In <u>Cantrell</u>, the Ninth Circuit considered whether a debtor, as a corporate principal, was the trustee of an express or technical trust under California law and, thus, was a fiduciary for purposes of the discharge exception for fiduciary fraud or defalcation.[147] Cal–Micro, Inc. obtained a default judgment against one of its corporate directors, Cantrell, for breach of fiduciary duty. Cantrell then filed a voluntary Chapter 7 bankruptcy petition, and, in response, Cal–Micro filed a complaint seeking to except its default judgment from discharge under § 523(a)(4). The Ninth Circuit concluded that, under California law, although officers and directors have fiduciary obligations to the corporation and its shareholders in agency, they are _not_

---

[144]<u>Cantrell</u>, 329 F.3d at 1127. <u>See also</u> <u>In re Gray</u>, 2011 WL 4503078, *9 (9th Cir. BAP 2011) ("...in Arizona, corporate assets are not held in trust by corporate officers and directors for the benefit of the corporation's shareholders. Consequently, following <u>Cantrell</u>, we hold that, under Arizona law, corporate officers and directors are not § 523(a)(4) fiduciaries."). <u>Accord</u> <u>In re Steele</u> 292 B.R. 422, 428 (Bkrtcy. D. Colo. 2003) (§ 523(a)(4) fiduciary exception not triggered by corporate director/shareholder relationship) (as cited in <u>In re Sawaged</u>, 2011 WL 880464, *3 (10th Cir. BAP 2011) (unpublished)).

[145]<u>Id.</u>

[146]<u>Cantrell</u>, 329 F.3d at 1127 (citing <u>Bainbridge v. Stoner</u>, 106 P.2d 423 (Cal. 1940), <u>Roots v. Bangerter</u> (<u>In re Bangerter</u>), 106 B.R. 649, 654 (Bankr. C.D. Cal. 1989) ("California law does not hold that a majority shareholder is a trustee of the corporate assets or any interests that shareholders may have in the corporate res.")).

[147]329 F.3d at 1125.

-32-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

1    fiduciaries for purposes of § 523(a)(4).[148]

2        The Ninth Circuit relied heavily on <u>Bainbridge v. Stoner</u>[149] in reaching its decision, and

3    focused on, among other things, the <u>Bainbridge</u> court's determination that the relationship

4    between a corporate director and the corporation and its shareholders is: "... strictly speaking, not

5    one of trust, but of agency."[150] And in the absence of an express or technical trust, Cal–Micro's

6    claim was not excepted from discharge.[151] Here, the instant case is factually analogous to

7    <u>Cantrell</u>, as both involve the non-trust relationship between a corporate officer/manager and the

8    entity's shareholders/members. Accordingly, Mr. Gayler *never* acted as a trustee for Plaintiffs,

9    and this claim must be dismissed.

10       For the notion that Mr. Gayler acted as their trustee, under either an express or technical

11   trust, Plaintiffs rely on the opinion in <u>In re Nassbridges</u>.[152] Notably, in that case, the Bankruptcy

12   Court determined that a *commodities broker* specializing exclusively in precious metals stood in

13   a "fiduciary capacity" to his cattle-rancher clients, for purposes of § 523(a)(4). The Bankruptcy

14   Court gave no citation to nor any explanation of legal authority to support its finding. Though on

15   appeal, the debtor challenged this finding and the Ninth Circuit Bankruptcy Appellate Panel,

16   Kirscher, Dunn, and Markell presiding, made it very clear why the relationship and attendant

17   finding of fiduciary capacity in that case is utterly incompatible with the facts and allegations in

18   the instant case. The BAP dispositively explained that, "[u]nder California law, *a broker or*

19   *securities salesperson* is a fiduciary to his or her client. *Securities brokers* are also fiduciaries for

20

21
22   [148] <u>Id.</u> at 1127 ("California case law has consistently held that while officers possess the fiduciary duties of an agent, they are not trustees with respect to corporate assets.").

23   [149] 16 Cal.2d 423, 106 P.2d 423 (1940)
24
     [150]<u>Id.</u> (quoting <u>Bainbridge</u>, 16 Cal.2d at 426, 106 P.2d 423).
25
26   [151]<u>Id.</u> at 1128 ("Because under California law a corporate officer is not a fiduciary within the meaning of § 523(a)(4), we further conclude that Cantrell is entitled to summary judgment on Cal–Micro's non-dischargeability claims.").
27

28   [152]434 B.R. 573 (Bkrtcy. C.D. Cal. 2010) (as cited in Plaintiffs' Trial Statement [Doc. 122] at 34).

-33-

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

purposes of section 523(a)(4)."[153]  In short, Mr. Gayler is *not* and *never has been* a securities or

commodities broker, and was not acting as such in the instant case.

Therefore, even assuming Nevada law is in accord with California on this point,

Nassbridges is irrelevant, and Mr. Gayler never acted in a fiduciary capacity for Plaintiffs herein.

Accordingly, Mr. Gayler is now entitled to a judgment of dismissal on this claim.

### D.   § 523(a)(4) claim: *Plaintiffs* Suffered No Cognizable Damages.

As noted, § 523(a)(4) excepts from discharge debts that arise from "fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Based

upon the foregoing, there was no larceny and no fiduciary capacity, leaving only an analysis of

the implied embezzlement claim.  Plaintiffs do not directly claim Mr. Gayler committed

embezzlement, but imply this legal theory through their allegation that he misused *their* money.

Even assuming all of Plaintiffs' allegations are correct, this claim must still be dismissed.

Determining whether a plaintiff has suffered a cognizable injury often requires

examination of the cause of action he asserts. "Essentially, the standing question...is whether the

constitutional or statutory provision on which the claim rests properly can be understood as

granting persons in the plaintiff's position a right to judicial relief."[154]  Notably, § 523(c)(1) states

that a debtor will be discharged from a debt of the kind specified in § 523(a)(4), *unless* "on

request of the *creditor to whom such debt is owed*," the bankruptcy court determines the debt is

non-dischargeable. Thus, only *creditors to whom a debt is owed* may assert that a debt is non-

dischargeable in bankruptcy. And Plaintiffs are not creditors to whom any debt is owed.

The essential question is whether Plaintiffs are creditors of Mr. Gayler.  Plaintiffs premise

their § 523(a)(4) claim on allegations that Mr. Gayler's misuse of *Diamante Rose's monies*

amounts to either fraud, defalcation or (impliedly) embezzlement.  Taking these allegations as

true, the Court could draw a reasonable inference that the LLC was damaged by Mr. Gayler's

diversion of the LLC's funds, and that Diamante Rose therefore holds a claim against Mr.

---

[153]In re Nassbridges, 464 B.R. 494, 2011 WL 3244396, *13 (9th Cir. BAP 2011) (unpublished) (internal citations omitted) (emphasis added).

[154] Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206 (1975).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

1    Gayler. The alleged facts however, and the evidence presented at trial, do not support a

2    conclusion that Plaintiffs, *as mere members of Diamante Rose*, are owed any debt by Mr. Gayler.

3    　　　　The Bankruptcy Appellate Panel's decision in In re Ping Ma[155] provides a persuasive

4    illustration of precisely this point.  There, a plaintiff initiated an adversary proceeding against his

5    former business associates, the debtors, alleging a § 523(a)(4) claim of embezzlement.[156]  The

6    plaintiff alleged that the debtors borrowed against and sold several of their corporate properties,

7    using the loan and sale proceeds for their own personal use.[157]  In dismissing the plaintiff's §

8    523(a)(4) claim at trial, the bankruptcy court determined that the evidence merely showed, as in

9    the instant case, potential embezzlement, if any, against the corporation, not the plaintiffs.[158]  The

10    BAP upheld this determination and dismissal, based upon the record, holding the plaintiff did not

11    present any evidence establishing that the debtors embezzled funds *from him*.[159]  More

12    specifically, the BAP explained:

13    　　　 [u]nder federal law, embezzlement in the context of non-dischargeability has often been
14    　　　 defined as the fraudulent appropriation of property by a person to whom such property
         has been entrusted or into whose hands it has lawfully come. Embezzlement requires: (1)
15    　　　 property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the
         property to a use other than which it was entrusted; and (3) circumstances indicating
16    　　　 fraud.
         ...
17    　　　 If anything, as the bankruptcy court pointed out, the evidence tends to indicate that the
         debtors may have embezzled funds from [the corporation] , not [the plaintiff].[160]
18

19    　　　　Likewise, here, Diamante Rose is a separate legal entity created pursuant to Nevada

20    statutes, which statutes provide that a limited liability company holds property separate and apart

21

22    　　　―――――――――――――――

23    [155]In re Ping Ma, 2011 WL 3300156 (9th Cir. BAP 2011) (unpublished).

24    [156] Id. at *1.

25    [157]Id.

26    [158]Id. at *3.

27    [159]Id. at *4.

28    [160]Id.

from the property of its members.[161]  As such, *only Diamante Rose* can assert claims for wrongful

distributions made to Mr. Gayler. Indeed, this well-settled proposition is consistent across

jurisdictions and within bankruptcy case law.[162]  Providing a historical perspective of limited

liability companies in Nevada, the Nevada Supreme Court in Weddell v. H2O, Inc. stated:

> Limited-liability companies (LLCs) are business entities created 'to provide a
> corporate-styled liability shield with pass-through tax benefits of a partnership.' White v.
> Longley, 358 Mont. 268, 244 P.3d 753, 760 (2010); Gottsacker v. Monnier, 281 Wis.2d
> 361, 697 N.W.2d 436, 440 (2005) (stating that "[f]rom the partnership form, the LLC
> borrows characteristics of informality of organization and operation, internal governance
> by contract, direct participation by members in the company, and no taxation at the entity
> level. From the corporate form, the LLC borrows the characteristic of protection of
> members from investor-level liability." (internal citation omitted)); Elf Atochem N.
> America, Inc. v. Jaffari, 727 A.2d 286, 287 (Del.1999) (LLCs allow "tax benefits akin to
> a partnership and limited liability akin to the corporate form.")[163]

In short, Plaintiffs have no facts showing they were injured individually, and are not

entitled to recover directly any damages that were inflicted on the LLC by Mr. Gayler's alleged

misuse of LLC monies. Accordingly, Plaintiffs are not "creditor[s] to whom such debt is owed,"

and therefore have no standing to pursue an objection to discharge under § 523(a)(4).

Mr. Gayler will not dispute that a portion of the funds held in the name of Diamante Rose

were not used for business purposes. However, the damage suffered from a purported

misappropriation of those funds was incurred by Diamante Rose, *not* the individual members,

i.e., *not* the Plaintiffs.  The loss of the Property - i.e, Plaintiffs' investment - was due to the

---

[161] See NRS 86.311 ("Acquisition, ownership and disposition of property. Real and personal property
owned or purchased by a company must be held and owned, and conveyance made, in the name of
the company.").

[162] See, e.g., In re Moore, 410 B.R. 439, 442 (Bankr. E.D. Va. 2009) ("although the debtor's interest
in a corporation becomes property of the estate when a bankruptcy petition is filed, the corporation's
property does not thereby become property of the shareholder's estate."); In re Young, 409 B.R. 508,
513 (Bankr. D. Idaho 2009) ("It is well accepted that a filing by an individual who is an owner of
a corporation brings into the estate only his ownership interest and not the assets of the
corporation."). Accord 2 Collier on Bankruptcy ¶ 101.30[3], at 101-139 (Alan N. Resnick & Henry
J. Sommer, eds., 15th ed. rev. 2009); Wynne v. Streetman (In re Russell), 121 B.R. 16, 17-18 (Bankr.
W.D. Ark.1990) (assets of corporations are not included in individual shareholder's bankruptcy
estate); Cadlerock Joint Venture II L.P. v. Robbins, 2009 WL 151695, at * 2 (W.D.Ky. 2009) (same).

[163] 271 P.3d 743 (Nev. 2012).

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

down-turn in the global real estate market, as the value of the Property plummeted.

In any event, even if the alleged misuse of funds caused the Property to be lost in foreclosure, the Plaintiffs' damages would only be their pro-rata portion of the fair market value of the Property on the date of foreclosure, as the Property -i.e., their investment - had substantially diminished by then, through no fault of Mr. Gayler.  Pursuant to their own allegations, each Plaintiff held only a 5% or 10% interest in the LLC, and therefore would only be entitled to that % of the fair market value of the Property on the date of foreclosure - i.e., $100,000 (as reflected in the Trustee's Deed Upon Sale).  For John O'Brien, this amounts to $10,000, and for the remaining Plaintiffs this amounts to $5,000.

## V.

## CONCLUSION

In sum, Mr. Gayler is entitled to judgment of dimissal on both § 523 claims. Mr. Gayler provided fair and truthful disclosures, and have no intent to deceive, therefore there is no sustainable § 523(a)(2) claim.  Moreover, this claim is barred by the applicable Nevada statute of limitation for fraud claims, which expired in 2008.  Also, Mr. Gayler never acted as a § 523(a)(4) fiduciary, so the "fraud or defalcation" aspect of that claim should should be dismissed.  Lastly, as to the implied embezzlement theory under § 523(a)(4), Plaintiffs have no standing because even if ture, their allegations only support a claim by Diamante Rose, i.e., the entity whose money Mr. Gayler allegedly converted, not Plaintiffs.  Accordingly, Mr. Gayler respectfully requests a judgment of dismissal on both of Plaintiffs' § 523 claims.

DATED this 19th day of August, 2012.

SYLVESTER & POLEDNAK, LTD.

By_____
JEFFREY R. SYLVESTER, ESQ.
MATTHEW T. KNEELAND, ESQ.
1731 Village Center Circle
Las Vegas, Nevada  89134
*Attorneys for Debtor William Gayler*

SYLVESTER & POLEDNAK, LTD.
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone (702) 952-5200

-37-